IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LAJUAN S.L. LOWERY,

      *Plaintiff,*

vs.

DETECTIVE SEAN FLYNN, *et al.*,

      *Defendants.*

Case No. 20-3278-EFM

**MEMORANDUM AND ORDER**

    Plaintiff LaJuan Lowery brings this action under 42 U.S.C. § 1983 alleging that his rights were violated when he was arrested by Leavenworth, Kansas police officers on April 24, 2019. The Defendant officers involved (Officer Jacqueline Cormier, Detective Sean Swisshelm, and Detective Sean Flynn) have moved for summary judgment, arguing that they had probable cause to arrest Plaintiff, and that any force used during the arrest was reasonable. (Doc. 47). As explained below, the Court finds that the motion should be granted.

        **I.**      **Factual and Procedural Background**[1]

    On April 24, 2019, Plaintiff LaJuan Lowery went to the Family Dollar store in Leavenworth, where he asked for a carton of Newport cigarettes. The store clerk asked if wanted a pack, because cartons were more expensive. Plaintiff insisted on a carton, but the clerk was

---

[1] In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts, and they are related in the light most favorable to the non-moving party.

unable to find a carton of that brand. She mentioned other brands in stock, and Plaintiff indicated he wanted a carton of Mavericks.

Before she could ring up the purchase, Plaintiff grabbed the carton out of the clerk's hands and ran out of the store. As he left, he also took other merchandise including a Body Armor drink, a Coke, and a couple of Mr. Goodbars. According to the testimony at his subsequent criminal trial, Plaintiff was intoxicated on marijuana, moonshine, and Triple Crown.

The theft was reported to the police. Officers were informed the suspect was a black male wearing a green jersey and khaki pants had left the store located near Broadway and Shawnee Streets, and was carrying cigarettes, Coke, and an orange Pringle can.

Detectives Flynn and Swisshelm were in an unmarked vehicle when they heard the call. Both were wearing black shirts and black exterior vests that read "POLICE" in white letters on the front and back.

The detectives saw a suspect matching the description roughly 1 to 2 minutes after the initial call over the radio. Flynn then used his radio to give the location to the responding patrol officer.

The responding patrol officer was Defendant Cormier, who was in a marked patrol car and wearing a police uniform. Cormier was driving west on Miami Street and spotted the Plaintiff several blocks from the Family Dollar.

Plaintiff was wearing a Green Bay Packers Aaron Rogers football jersey, khaki shorts, and was carrying items in both hands. Cormier identified herself, and ordered the Plaintiff to stop.

Plaintiff did not stop, and walked behind the buildings of a tree trimming business which faced the street. Cormier left her vehicle and began walking west along the sidewalk. Cormier

saw Plaintiff again in the alley in a gap between the buildings. She yelled, "Hey! I already saw you." Plaintiff then began to run.

By this time, the detectives had stopped their car further down the street. Both jumped out, and joined the pursuit.

Plaintiff ran west across the business property, dodged a car while crossing 10th Steen, and into a field on the other side. Throughout this time, he was carrying a bottle of orange energy drink, a bottle of coke, and a carton of Maverick cigarettes. Apparently intoxicated, he ran in a zig-zag like he was running a football pattern.

Throughout this time, all three Defendants were yelling, "Stop! Police!" Some variation of these directives were shouted nearly a dozen times. As noted earlier, both detectives had the word "POLICE" emblazoned on their vests. In addition, by the time they had left their vehicle, both detectives had pulled out the lanyards holding their gold badges which were then prominently visible around their necks.

Plaintiff continued to run until Detective Swisshelm tried to grab hold of his arm. The two tripped over each other and fell on the grass. Detective Flynn arrived almost immediately, and a few seconds later, Officer Cormier came up to the scene.

Plaintiff testified at his criminal trial that he "freaked out…when [the] officers tried to cuff [him] because [he] wasn't understanding what [he] was being arrested for."

Plaintiff resisted the arrest. The detectives grabbed Plaintiff's arms as he lay face down in the grass, while Officer Cormier tried to handcuff him. The detectives also tried control Plaintiff by ordering him to turn to his stomach and placing him in an arm bar. However, the detectives were not able to pull Plaintiff's right arm behind him, and he pulled it back under his body.

Plaintiff slipped out of Swisshelm's grasp and began to "tense up" in resistance. He then got to his knees and tried to stand. Throughout this time, Detective Flynn was identifying himself as police, and was ordering Plaintiff to put his hands behind his back. Plaintiff did not follow these commands.

While Flynn was attempting to regain control, Plaintiff bit him on his left wrist. Flynn exclaimed to the other officers that Plaintiff bit him, and asked Officer Cormier to tase Plaintiff. The detectives were not carrying tasers, and Flynn believed their tactics would not succeed in placing Plaintiff under control.

While Cormier tried to use her taser, Plaintiff continued to struggle and ultimately tried to take the taser from her.

Under Leavenworth Police Department's use-of-force policy, use of a taser depends on the level of resistance. At the Plaintiff's subsequent criminal trial, officers testified that Plaintiff's resistance rose to a level warranting the use of a taser.

Plaintiff is physically larger than any of the defendants. During his efforts to wrest the taser from Cormier, Plaintiff bit her on the left hand, drawing blood.

Cormier used her taser on Plaintiff. But the confused struggle was such that all three officers were also tased.

Eventually, Detective Flynn placed his hands on Plaintiff's neck and forced him down onto his stomach. The officers were then able to place Plaintiff in handcuffs with the assistance from two male civilians.

All force then stopped and Plaintiff was placed in custody. At the time of the arrest, Plaintiff had three pending warrants, one for a felony failure to appear, and two for misdemeanor failure to appear.

Shortly after the arrest, Paramedics cleared Plaintiff of any physical injury after evaluating him.

At the conclusion of his criminal trial, the jury found Plaintiff guilty of one count of battery on a law enforcement officer (a level 7 person-felony), one count of interference with a law enforcement officer (a level 9 non-person felony), and one count of Theft (a class A misdemeanor).

In addition to the three remaining officers, Plaintiff's original Complaint also named as Defendants the State of Kansas, the City of Leavenworth, the Leavenworth Police Department, and Police Chief Patrick R. Kitchens. Plaintiff's Amended Complaint, filed January 27, 2021, omits any reference to Chief Kitchens. After reviewing the Complaint, the Court dismissed the State of Kansas on January 28, 2021, finding no plausible claim advanced against that party.

After issuing an Order for Plaintiff to show cause why the City and the Lawrence Police Department should not be dismissed, the Magistrate Judge reviewed Plaintiff's response and found no factual allegations which would support any a finding of liability. Plaintiff "does not include any factual allegations concerning them," but advances claims solely "premised on the actions of the defendant officers." The Court accepted the Recommendation, and dismissed those parties on July 16, 2001. Thus, the only Defendants remaining in the action are the three individual officers present at the scene of the arrest.

The events surrounding that arrest were captured on body cameras worn by the officers. Plaintiff viewed the body camera videos at his criminal trial. In addition, in the present action the Court directed that the video be made available to Plaintiff at the Leavenworth County Jail. According to a letter from Leavenworth Jail Commander Lt. Eric Thorne, Plaintiff refused to watch the video.

Plaintiff received repeated extensions of time to respond to the motion for summary judgment, in all some 139 days. The Response is an unsworn narrative describing Plaintiff's beliefs about why he believes he was wronged. But the Plaintiff fails to directly controvert the facts set forth in the Defendants' motion, nor does he attempt to refute or explain what is shown on the body camera footage.

On November 10, 2022, the case was transferred to the undersigned.

## II.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[2] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[3] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[4] The nonmovant must then bring forth specific facts showing a genuine issue for trial.[5] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary

---

[2] Fed. R. Civ. P. 56(a).

[3] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006) (citation omitted), *abrogation on other grounds recognized by Bertsch v. Overstock.com*, 684 F.3d 1023, 1029 (10th Cir. 2012).

[4] *Thom v. Bristol-Myers Squibb Co*., 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[5] *Garrison v. Gambro, Inc*., 428 F.3d 933, 935 (10th Cir. 2005) (citation omitted).

judgment.[6] The Court views all evidence and reasonable inferences in the light most favorable to the non-moving party.[7]

### III.   Analysis

Plaintiff's Amended Complaint presents three claims against the Defendants: false arrest, "discrimination towards mentally ill people," and that the officers employed "unnecessary force and aggression."

Defendants first argue that the claim of false arrest is barred by the doctrine expressed in *Heck v. Humphrey*,[8] which held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.[9]

If a "judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . . . the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."[10]

Here, the uncontroverted facts show Plaintiff was convicted of felony battery on a law enforcement officer, felony interference with a law enforcement officer, and misdemeanor theft. However, after Defendants' motion, and shortly before their Reply, the Kansas Court of Appeals

---

[6] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998)).

[7] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (citation omitted).

[8] 512 U.S. 477 (1994).

[9] *Id*. at 486-87.

[10] *Id*. at 487.

rendered its decision in *State v. Lowery*.[11]  The court rejected Plaintiff's argument that the district court had erred in refusing his request for an instruction on the lesser included offense of battery of misdemeanor battery of a law enforcement officer.

However, the court remanded the case for further proceedings to determine if the district court had erred in allowing Plaintiff to represent himself, given various indications of mental instability.  The court concluded:  "This case must be reversed and remanded for further proceedings.  On remand, the district court must either appoint counsel to represent Lowery, or Lowery must knowingly and intelligently waive his right to counsel if he chooses to represent himself."[12]

The parties have not attempted to inform the Court of the results, if any, of the state criminal action following remand.  But the decision by the Kansas Court of Appeals reflects a determination that the existing conviction is invalid, and thus the Defendants' argument does not support dismissal of the action.

However, independent of the rule expressed in *Heck v. Humphrey*, Plaintiff's false arrest claim remains subject to dismissal given the uncontroverted evidence in this action.  "[C]laims for false arrest or false imprisonment cannot stand if there was probable cause to arrest."[13]  "Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime."[14]

---

[11] 2022 WL 128579 (Kan. Ct. App. 2022).

[12] *Id*. at 11.

[13] *Trimble v. Park County Bd. of Com'rs*, 2000 WL 1773239, at *3 (10th Cir. 2000) (citation omitted).

[14] *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996).

The Defendants had probable cause to arrest Plaintiff. His description matched that in the report of the theft at the Dollar General Store, he was carrying merchandise of the sort that was stolen, and he was seen shortly after the theft in the vicinity of the store. Indeed, Plaintiff does not controvert that he was the thief. When Officer Coumier identified herself and asked Plaintiff to stop, he fled in a manner suggesting intoxication. Plaintiff refused further orders to stop, and when the officers tried to physically restrain him, he repeatedly assaulted them by trying to bite him. Thus, even if Plaintiff has not been convicted of the underlying offenses, the uncontroverted evidence in this case establishes that there was probable cause for the arrest.

Plaintiff's claim of excessive force is similarly deficient. "Claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment."[15] This standard requires balancing " 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.' "[16] "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."[17] Thus, the reasonableness of the officer's actions must be assessed from the officer's perspective on the scene, understanding that the officer is under stressful and dangerous circumstances requiring split-second decisions.[18] As a result, "[n]ot every push or shove, even if

---

[15] *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 200q).

[16] *Scott v. Harris*, 550 U.S. 372, 383 (2007) (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)).

[17] *Graham v. Connor*, 490 U.S. 386, 396-97 (1989).

[18] *Medina*, 252 F.3d at 1131.

it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."[19]

There are several relevant factors when considering whether the amount of force exercised was objectively reasonable: (1) the severity of the underlying offense, (2) whether the suspect posed an immediate threat to the officer, and (3) whether the suspect was actively resisting arrest.[20] Of these, the existence of an immediate threat to officers is "undoubtedly the most important" factor.[21] Objective reasonableness is a legal determination in the absence of disputed facts.[22]

Here, Plaintiff tried to flee from officers attempting to investigate the reported theft. He fled even though the officers identified themselves as police and were wearing police uniforms or vests clearing identifying who they were. Plaintiff argues in his response that he was at the time "not in his right mind frame." But Plaintiff also testified in his criminal trial that "when [the] officers tried to cuff [him] because [he] wasn't understanding what [he] was being arrested for." In other words, whether Plaintiff was intoxicated or suffering from a medical episode, he understood that he was facing police officers who were trying to arrest him. Even if he did not understand *why* the officers were trying to arrest him, Plaintiff was not privileged to use violent force to resist the arrest.[23]

---

[19] *Ellsworth v. City of Broken Arrow, Okla.*, 850 F. App'x 619, 626 (10th Cir. 2021) (quoting *Graham*, 490 U.S. at 396 (additional quotation and citation omitted)).

[20] *Medina*, 252 F.3d at 1131.

[21] *Est. of Valverde by & through Padilla v. Dodge*, 967 F.3d 1049, 1061 (10th Cir. 2020) (quoting *Pauly v. White*, 874 F.3d 1197, 1216 (10th Cir. 2017)).

[22] *Medina*, 252 F.3d at 1131.

[23] *See Starrett v. City of Lander*, 699 F. App'x 805, 810 (10th Cir. 2017) (distinguishing earlier cases indicating the existence of a common law right to resist an unlawful arrest, and stating "that right 'has given way in

Further, the force employed by Plaintiff was particularly dangerous. In finding that the district court had correctly refused to instruct on the lesser offense of misdemeanor battery, the Kansas Court of Appeals stressed that the "evidence is uncontroverted" that "Lowery broke the officer [Cormier]'s skin, causing her to bleed."[24] Cormier testified that "she went to the hospital due to the potential exposure to Lowrey's bodily fluids through the bite."[25]

Certainly, "being struck by a taser gun is an unpleasant experience."[26] But the use of such a weapon may still be reasonable where an officer faces a "hostile, belligerent, and uncooperative" suspect who refuses lawful commands, since the limited use of the taser "may well have prevented a physical struggle and serious harm to either [the suspect] or [the officer]."[27]

Thus, in *Hinton v. City of Elwood, Kan.*,[28] the Tenth Circuit concluded that police officers who "[n]ot only wrestled [plaintiff] to the ground but . . . used a stun gun on him" had not violated the plaintiff's constitutional rights, as this occurred after he "was actively and openly resisting [their] attempts to handcuff him, even to the extent of biting the officers."[29]

---

many jurisdictions to the modern view that the use of force is not justifiable to resist an arrest which the actor knows is being made by a peace officer, although the arrest is unlawful.' ") (quoting 2 Wayne R. LaFave et al., *Criminal Procedure,* § 3.1(o) (4th ed.)).

[24] *Lowery*, 2022 WL 128579, at *5.

[25] *Id*. at *4.

[26] *Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004)

[27] *Id.*

[28] 997 F.2d 774 (10th Cir. 1993).

[29] *Id*. at 781.  *See also Crowder v. City of Alton*, 2018 WL 11271193, at *3 (S.D. Ill. 2018) (observing that there was "no evidence in this case indicates that Officer Morelli used excessive force—probably because Crowder presented none. Instead, every piece of available evidence shows that Crowder actively resisted arrest and started a brawl with Officer Morelli, which included Crowder biting and attempting to disarm Officer Morelli.").

Here, Plaintiff was fleeing and actively resisting arrest. By the time the Defendants employed tasers, Plaintiff had become a threat to the officers in their efforts to effect a lawful arrest, and was fighting off their efforts to place him under restraint. The taser was used only after all three officers were unable to physically place handcuffs, and was not applied gratuitously or with any apparent intent to injure Plaintiff. The officers deployed the taser at some risk to themselves, given the confused physical struggle, and indeed each of the officers was hit by the device. Shortly after Plaintiff was hit, his struggles ceased, he was handcuffed, and was attended to by emergency medical technicians who had arrived at the scene. These technicians found no physical injury to Plaintiff, who within minutes was walked away and placed in a police vehicle.

Given all the circumstances of the case, the Court finds that Defendant's did not violate Plaintiff's constitutional rights by using excessive force in arresting him.

Finally, as noted earlier, Plaintiff makes the additional claim that Defendants discriminated against him because of his mental condition. But even assuming Plaintiff does suffer from some mental incapacity, Plaintiff provides no evidence that the Defendants were or should have been aware of it. The officers had probable cause to arrest Plaintiff as a suspect in a reported strong arm robbery from a nearby store, and the report failed to give any indication of that the suspect was lacking in mental capacity. The testimony at Plaintiff's criminal trial indicated that he was intoxicated on the day of the theft. Video from the officers' body cameras confirms that their suspect intended to flee, and was prepared to use violence to resist arrest.

Thus, there were at time no grounds for the officers to believe Plaintiff suffered from some degree of mental incapacity. But even if such grounds existed, the fact remains that the

officers had probable cause to arrest Plaintiff, and to use reasonable force to overcome his violent refusal to be placed under restraint.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Doc. 47) is hereby **GRANTED**.

**IT IS SO ORDERED**.

Dated this 22nd day of December, 2022.

This closes the case.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE